FARMERS MUTUAL INSURANCE COMPANY V. DAVID A.
MEESE.

FILED DECEMBER 2, 1896.   No. 7006.

1. **Corporations:** COMPROMISE. A corporation has power to compro-
mise a doubtful claim against it, although such doubt arises in
regard to the power of the corporation to enter into the contract
creating the claim.

2. **Insurance:** COMPROMISE: PROMISSORY NOTE: LIABILITY OF INSURER.
A mutual insurance company agreed to insure a mare against acci-
dent, and at the time of the application received a premium
note from the insured. The mare was injured by accident. There-
after the company issued its policy according to its agreement,
with knowledge of the loss, and entered into arbitration to adjust
the loss. An award was made, which the company did not pay.
The insured, in order to avoid "further trouble and annoyance,"
accepted the company's promissory note for a less sum than the
award, payable at a future date. The company had in the mean-
time collected the premium note. *Held,* That it was liable for the
amount of the note, whether or not it had power under the law to
accept such risks.

ERROR from the district court of Lancaster county.
Tried below before HALL, J.

*Lamb, Adams & Scott,* for plaintiff in error.

*J. H. Broady, contra.*

IRVINE, C.

The questions presented by this record are the suf-
ficiency of the petition to state a cause of action and the
sufficiency of the evidence to sustain the finding. The
action was by Meese against the insurance company, a
mutual insurance company organized under the laws of
this state, to recover on a policy or certificate issued by
the company to Meese. The petition sets out that on
November 11, 1891, Meese was the owner of a certain
mare. On that day the defendant agreed to insure said
mare in the sum of $400 against loss or damage by fire,

lightning, wind, tornado, or accident, agreeing to deliver to plaintiff within a reasonable time, its policy, and at the same time showing plaintiff a copy of its by-laws authorizing it to make such insurance. The plaintiff on his part made and delivered to the company his promissory note for $6, payable December 15, 1891. On the 14th of November the mare suffered an injury by accident. On the 16th of November the insurance company, with knowledge of its liability, made and delivered its policy as agreed. The plaintiff gave notice of loss and the defendant proceeded to adjust the loss, and in pursuance of statute selected an arbitrator. The plaintiff also selected an arbitrator and these two selected a third. The three arbitrators so chosen made an award of $300 in favor of plaintiff, and, in the language of the petition, "thereupon, at the persistent importunities of defendant, the plaintiff consented to deduct from said award $50 on condition that defendant would pay without further trouble and annoyance, whereupon, as a final agreement and settlement of the amount of defendant's liability which should be paid by defendant without further trouble to plaintiff, the defendant made to plaintiff its promissory note," whereby it promised to pay to Meese, June 1, 1892, $250, with interest at eight per cent from its date, January 28, 1892. On the 18th of December, 1891, the plaintiff had paid in full his premium note and the defendant accepted such payment. The plaintiff prayed judgment accordingly. The defendant, by its answer, denied the authority of its agent to write the insurance and pleaded that it was not authorized by law to insure property against loss by accident. It also denied certain other allegations of the petition, but on the trial there was an express admission made of the truth of all the averments of the petition, so that the only question presented was that of *ultra vires*. A jury was waived and the court found for the plaintiff.

We do not think we are called upon to enter into any consideration of the powers of mutual insurance com-

panies as regards the nature of risks they may assume,
nor are we even called upon to determine whether under
the facts admitted the defendant was estopped to plead
*ultra vires*.  From the standpoint of the insurance com-
pany the claim of Meese had certainly sufficient merit to
raise a contention, the result of which was doubtful.
We may assume that to insure live stock against acci-
dents was wholly beyond the powers conferred by statute
on such companies.   Nevertheless, this company, ac-
cording to the admitted facts, had agreed to insure this
property against accident.   It had received the note for
the premium.    After the loss, and with knowledge
thereof, it had issued its policy.   It had entered into ar-
bitration and an award had been made.   It had received
payment of the premium note.   There was certainly a
fair ground of contention, not only from all these facts,
but from any part of them, that the company had es-
topped itself from repudiating the contract.   Indeed, it
is not too much to say that it would shock the conscience
of lawyer and layman alike were he to learn that an in-
surance company might write unauthorized risks, receive
the premiums, and retain them if no loss resulted, but in
cases where loss arose repudiate them on the ground of
want of authority.   Such a business might be profitable
for a time to the insurance company, but its pursuit
would not be creditable to the men engaged therein.   The
defendant's liability under the circumstances being
doubtful, after the award was made, it induced the
plaintiff, in consideration of settlement "without further
trouble and annoyance," to accept its note for a less
amount than the award, payable at a future date.
Whether or not we accept in full the argument of counsel
for the defendant in error, that "a corporation always
has power to be honest," we are sure of its power to ef-
fect the compromise of a doubtful claim, even though it
involve the company's honesty or its corporate powers.
This being true, its obligation to pay the amount agreed
on by way of compromise was in any event valid and en-

forceable, and the judgment of the district court was
right.

AFFIRMED.